Filed 6/17/2026 5:00 PM
Accepted: 6/18/2026 10:15 AM
Tammy Robinson
District Clerk
Taylor County, Texas
Monica Mendoza

Cause No. _____52545-A_____

| | | |
|---|---|---|
| ADA LOUISE McHENRY, individually and on behalf of all others similarly situated, | § § § | **IN THE DISTRICT COURT** |
| Plaintiff, | § § | Taylor County - 42nd District Court |
| v. | § § | _____ **JUDICIAL DISTRICT** |
| HENDRICK MEDICAL CENTER d/b/a HENDRICK MEDICAL CENTER SOUTH AND HENDRICK HEALTH; and XSOLIS, INC., | § § § § § | |
| Defendants. | § § | **TAYLOR COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION IN CLASS ACTION

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Ada Louise McHenry, individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action against Defendants Hendrick Medical Center d/b/a Hendrick Medical Center South and Hendrick Health ("Hendrick" or "Hendrick Medical Center") and Xsolis, Inc. ("Xsolis") (collectively, "Defendants"), and their subsidiaries and affiliates, to hold Defendants accountable for the harm they caused Plaintiff and similarly situated individuals ("Class Members") due to their negligence and failure to take reasonable precautions to protect the sensitive personal information that Defendants collect and maintain in the regular course of business from unauthorized and unlawful use or disclosure. In support hereof, Plaintiff alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

1

Copy from re:SearchTX

## DISCOVERY CONTROL PLAN

1.      Plaintiff intends that discovery be conducted under Discovery Level 3 in accordance with Texas Rule of Civil Procedure 190.4 and requests that the court enter a discovery control plan order tailored to the circumstances of this suit. This case is not subject to the restrictions of expedited discovery under Texas Rule of Civil Procedure 169 because the potential relief sought by the Plaintiff and the putative class members in this action includes a claim for nonmonetary injunctive, declaratory, and incident and subordinate relief and claims for monetary relief including costs and attorneys' fees in excess of $1,000,000.

## PARTIES

2.      Plaintiff Ada Louise McHenry is a citizen of Merkel, Texas. The last three numbers of Plaintiff's driver's license number are 189.

3.      Defendant Hendrick Medical Center is a domestic nonprofit corporation organized and existing under the laws of the State of Texas and operates Hendrick Medical Center South and Hendrick Health and provides healthcare services to patients throughout Taylor County and the surrounding region. Defendant may be served through its principal place of business at 1900 Pine Street, Abilene, Texas 79601 and its registered agent in Texas is Brad Holland or wherever they may be found.

4.      Defendant Xsolis, Inc., is a corporation incorporated in the State of Delaware. Defendant Xsolis provides case and utilization management services to Hendrick Medical Center and, in connection with those services, received, stored, and maintained the private information of Plaintiff and Class Members. Defendant may be served through its registered agent National Registered Agents, Inc. located at 1209 Orange Street, Wilmington, Delaware 19801 or wherever they may be found.

1

Copy from re:SearchTX

5.      Whenever in this Petition it is alleged that Defendants did any act, it is meant that the named Defendants performed or participated in the act, or the named Defendants' officers, agents, partners, trustees, or employees performed or participated in the act on behalf of and under the authority of the Defendants. The claims stated in this Petition are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents, and/or assigns.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the present case because this matter involves claims in excess of the minimum and otherwise within the Court's jurisdictional limits, and it involves causes of action over which this Court has subject matter jurisdiction.

7.      Venue is proper in Taylor County, Texas under Tex. Civ. Prac. & Rem. Code § 15.002(a) because this was the county in which a substantial part of the events and omissions giving rise to the claims occurred. Additionally, and in the alternative, venue is proper in Taylor County, Texas because Defendant Hendrick Medical Center's principal office is located in Taylor County. Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(3).

8.      This action is brought by Plaintiff as a class action individually and on behalf of all others similarly situated under Rule 42 of the Texas Rules of Civil Procedure. Plaintiff and the putative class members seek nonmonetary injunctive, declaratory, and incident and subordinate relief and monetary relief including costs and attorneys' fees in excess of $1,000,000.

9.      Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over $1,000,000 for the class.

10.     Upon information and belief, Plaintiff's individual damages are less than $75,000.

Copy from re:SearchTX

11.     State court jurisdiction is proper, and this action is not subject to removal to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Specifically, the home state exemption applies under 28 U.S.C. § 1332(d)(4)(B) because, upon information and belief, two-thirds or more of the members of the proposed Class are citizens of the State of Texas, and the primary Defendant, Hendrick Medical Center, is a citizen of Texas -- a Texas domestic nonprofit corporation with its principal place of business in Abilene, Texas. This Court is therefore the appropriate forum for the just and efficient resolution of the claims of the Class.

12.     Additionally, and in the alternative, the local controversy exemption applies under 28 U.S.C. § 1332(d)(4)(A) because: (a) upon information and belief, greater than two-thirds of the members of the proposed Class are citizens of Texas; (b) at least one defendant -- Hendrick Medical Center -- is a citizen of Texas from whom significant relief is sought, and whose alleged conduct forms a significant basis for the claims asserted by the proposed Class; (c) the principal injuries resulting from the alleged conduct of Defendants were incurred in Texas, where the patients of Hendrick Medical Center reside and received care; and (d) upon information and belief, no other class action asserting the same or similar factual allegations against any of the Defendants was filed in the three-year period preceding the filing of this Petition.

## STATEMENT OF FACTS

**A.     Background**

13.     Plaintiff brings this class action against Defendants for their negligence and failure to properly secure and/or safeguard Plaintiff's and the similarly situated Class Members' Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information"), including Social Security numbers, dates of birth, doctor names, medical diagnosis

Copy from re:SearchTX

information, medical record numbers, medical treatment dates, and patient ID and account numbers (the "Data Breach").

14.    The personal data exposed by Defendants is highly sensitive. Plaintiff and the Class will be at a heightened risk of identity theft and fraud for the rest of their lives.

15.    Defendant Hendrick Medical Center is a Texas domestic nonprofit corporation that provides healthcare services to thousands of patients each year, operating as Hendrick Medical Center South and Hendrick Health in Taylor County and the surrounding region.

16.    Defendant Xsolis, Inc. is a corporation that provides case and utilization management services to Hendrick Medical Center. As a vendor of Hendrick Medical Center, Xsolis received, stored, and maintained Plaintiff's and Class Members' Private Information in connection with those services.

17.    Plaintiff and the Class Members are or were patients of Hendrick Medical Center.

18.    Defendants required that Plaintiff and the Class Members provide their Private Information in order to obtain Hendrick Medical Center's healthcare services.

19.    Defendants obtained the PII and PHI of Plaintiff and Class Members, by collecting it directly from the Plaintiff and Class Members in the course of providing and coordinating healthcare services.

20.    Plaintiff and Class Members relied on Defendants to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

Copy from re:SearchTX

21. Defendants had a duty to adopt reasonable measures to protect the PII and PHI of Plaintiff and the Class Members from involuntary disclosure to third parties.

**B. The Data Breach**

22. On January 22, 2026, Defendant Xsolis became aware of unauthorized activity resulting from a targeted phishing attack.

23. Xsolis, as a vendor of Hendrick Medical Center providing case and utilization management services, had received and stored the Private Information of Plaintiff and Class Members. That Private Information was accessible to and accessed by the unauthorized actor in the phishing attack.

24. Defendants, working with consultants, assessed the data and identified affected protected health information. Defendants determined that some Private Information of Plaintiff and Class Members may have been accessed, which may have included Social Security numbers, dates of birth, doctor names, medical diagnosis information, medical record numbers, medical treatment dates, and patient ID or account numbers.

25. Defendants knew of their duties to Plaintiff and the Class Members, and the risks associated with failing to protect the PII and PHI entrusted to them.

26. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the complete remedial measures undertaken to ensure a breach does not occur again have not been fully shared with Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

27. The unencrypted PII and PHI of Plaintiff and Class Members may end up for sale on the dark web or simply fall into the hands of companies that will use the detailed PII for targeted

Copy from re:SearchTX

marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

**C.      Defendants' Response to the Data Breach is Inadequate**

28.      With a Data Breach, time is of the essence.

29.      Defendants failed to inform Plaintiff and the Class Members of the Data Breach in time for them to protect themselves from identity theft.

30.      Defendants became aware of the Data Breach as early as January 22, 2026. Yet, Defendants did not begin notifying affected individuals until on or around June 5, 2026. Over 130 days after Defendants discovered the unauthorized access.

31.      The Notice of Data Breach sent by Hendrick Medical Center d/b/a Hendrick Medical Center South and Hendrick Health was dated June 5, 2026.

32.      During the interval between the Data Breach and the notification, cybercriminals had the opportunity to exploit Plaintiff's and the Class Members' PII and PHI while Defendants were investigating the Data Breach.

33.      As a result, Plaintiff and the Class Members were not able to timely mitigate damages arising from misuse of their PII and PHI, including freezing their credit, monitoring credit reports and bank accounts, and checking up on their medical reports and insurance.

Copy from re:SearchTX

34.     HHS requires if a breach of unsecured protected health information affects more than 500 or more individuals, a covered entity must notify the Secretary of the breach without reasonable delay and in no case later than 60 calendar days from the discovery of the breach.[1]

35.     The State of Texas requires that any business that experiences a data breach "notify the attorney general of that breach as soon as practicable and not later than the 30th day after the date on which the person determines that the breach occurred if the breach involves at least 250 [Texas] residents." Tex. Bus. & Com. Code Ann. § 521.053(i).

36.     Defendants knew or should have known of their duty to timely report the Data Breach to HHS and to notify Plaintiff and the Class Members. Yet, Defendants did not take reasonable and adequate steps to conduct a timely investigation and send timely and adequate notice.

**D.     The Data Breach was Foreseeable**

37.     Preceding the Data Breach, Defendants knew or should have known that they were targets for cybersecurity attacks because warnings were readily available and accessible via the internet.

38.     In October 2019, the Federal Bureau of Investigation published online a Public Service Announcement titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[2]

---

[1] U.S. Dep't of Health & Hum. Servs., Submitting Notice of a Breach to the Secretary, HHS.gov, https://www.hhs.gov/hipaa/for-professionals/breach-notification/breach-reporting/index.html (last reviewed Feb. 13, 2026) (last visited June 17, 2026).
[2] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations

Copy from re:SearchTX

39.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[3]

40.    In October 2023, the United States Cybersecurity and Infrastructure Security Agency published online a "#StopRansomware Guide" advising that "malicious actors have adjusted their ransomware tactics to be more destructive and impactful and have also exfiltrated victim data and pressured victims to pay by threatening to release the stolen data."[4]

41.    This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that: (i) cybercriminals were targeting healthcare organizations such as Defendants, (ii) cybercriminals were ferociously aggressive in their pursuit of companies in possession of significant sensitive information, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

42.    Prior to the Data Breach, Defendants knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII and PHI could be accessed, exfiltrated, and published as the result of a cyberattack.

---

(Oct. 2, 2019), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited June 17, 2026).

[3] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), available at https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited June 17, 2026).

[4] U.S. CISA, #StopRansomware Guide – October 2023, available at https://www.cisa.gov/sites/default/files/2025-03/StopRansomware-Guide%20508.pdf (last visited June 17, 2026).

Copy from re:SearchTX

43.     Prior to the Data Breach, Defendants knew or should have known that they should have confirmed the information was encrypted to protect against its publication and misuse in the event of a cyberattack.

44.     Since the breach, Defendants continue to store patient information, including Plaintiff's and Class Members' Private Information, and have failed to make adequate assurance that they have enhanced their security practices sufficiently to avoid another breach.

**E.      The Data Breach was Preventable**

45.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

46.     To prevent and detect ransomware attacks, including the phishing attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

---

[5] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited June 16, 2026).

Copy from re:SearchTX

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls -- including file, directory, and network share permissions -- with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

47.	To prevent and detect ransomware attacks, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**
   - Apply latest security updates
   - Use threat and vulnerability management
   - Perform regular audit; Remove privilege credentials

- **Thoroughly investigate and remediate alerts**
   - Prioritize and treat commodity malware infections as potential full compromise

Copy from re:SearchTX

- **Include IT Pros in security discussions**

  o Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely

- **Build credential hygiene**

  o Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

  o Apply principle of least-privilege

- **Monitor for adversarial activities**

  o Hunt for brute force attempts

  o Monitor for cleanup of Event logs

  o Analyze logon events

- **Harden Infrastructure**

  o Use Windows Defender Firewall

  o Enable tamper protection

  o Enable cloud-delivered protection

  o Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[6]

48.    Given that Defendants were storing the PII and PHI of Plaintiff and Class Members, Defendants could and should have implemented all of the above measures to prevent and detect cyberattacks.

---

[6] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomwareattacks-a- preventable-disaster/ (last visited June. 16, 2026).

Copy from re:SearchTX

49.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII and PHI of Plaintiff and Class Members.

50.    Defendants could have prevented this Data Breach by properly securing and encrypting the folders, files, and data fields containing the PII and PHI of Plaintiff and Class Members. Alternatively, Defendants could have destroyed the data they no longer had a reasonable need to maintain.

51.    Defendants' negligence in safeguarding the PII and PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

52.    Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

**F.    Defendants Failed to Comply with Texas's Identity Theft Enforcement and Protection Act.**

53.    Defendants' failure to encrypt Plaintiff's and Class Members' sensitive information and implement minimum and basic cybersecurity precautions that a reasonable and prudent business would under similar circumstances constitutes a reckless disregard for Plaintiff's and Class Members' privacy rights and rises to the level of gross negligence.

54.    Under Tex. Bus. & Com. Code Ann. § 521.002, the term "Sensitive Personal Information" means:

(A)    an individual's first name or first initial and last name in combination with any one or more of the following items, if the name and the items are not encrypted:

(i)      social security number;

(ii)     driver's license number or government-issued identification number; or

(iii)    account number or credit or debit card number in combination with any required security code, access code, or password that would permit access to an individual's financial account; or

(B)  information that identifies an individual and relates to:

(i)      the physical or mental health or condition of the individual;

(ii)     the provision of health care to the individual; or

(iii)    payment for the provision of health care to the individual.

Tex. Bus. & Com. Code Ann. § 521.002.

55.      An entity doing business in Texas must "implement and maintain reasonable procedures, including taking any appropriate corrective action, to protect and safeguard from unlawful use or disclosure any sensitive personal information collected or maintained by the business in the regular course of business." Tex. Bus. & Com. Code Ann. § 521.052.

56.      An entity doing business in Texas must "destroy or arrange for the destruction of customer records containing sensitive personal information within the business's custody or control that are not to be retained by the business." Tex. Bus. & Com. Code Ann. § 521.052.

57.      Defendants failed to implement and maintain reasonable procedures to protect and safeguard Plaintiff's and the Class Members' Sensitive Personal Information from unlawful use and disclosure, in violation of the Texas Identity Theft Enforcement and Protection Act, Tex. Bus. & Com. Code Ann. § 521.001 et seq.

**G.      Defendants Failed to Comply with FTC Guidelines.**

58.      The duty to employ reasonable security measures is highlighted under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or

Copy from re:SearchTX

affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data and misrepresenting their information collection practices contained within privacy policies.

59.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of PII.

60.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201 (2013). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

61.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

     a.   Protect the sensitive consumer information that they keep;

     b.   Properly dispose of PII that is no longer needed;

     c.   Encrypt information stored on computer networks;

     d.   Understand their network's vulnerabilities; and

     e.   Implement policies to correct security problems.

Copy from re:SearchTX

62. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

63. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

64. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

65. Defendants' negligence and failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and the Class's PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**H.     Defendants Violated HIPAA**

66. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.

Copy from re:SearchTX

67. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information is properly maintained.

68. The Data Breach resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that they create, receive, maintain and transmit in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

Copy from re:SearchTX

      i.   Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

69.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

**I.     Defendants Violated the Privacy Policy of Hendrick Medical Center**

70.     Defendants made promises to Plaintiff and the Class Members to keep their PII and PHI confidential.

71.     Hendrick Medical Center is required by law to maintain the privacy and security of protected health information, and made representations to Plaintiff and the Class Members that it would not share their information other than as described in its Notice of Privacy Practices unless it received written authorization.

72.     Plaintiff and the Class Members relied on Defendants' guarantees.

73.     In failing to adequately protect and keep confidential Plaintiff's and the Class Members' PII and PHI, Defendants violated these privacy commitments.

**J.     Defendants Failed to Comply with Industry Standards**

74.     Experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

75.     Several best practices have been identified that, at a minimum, should be implemented by healthcare providers like Defendants, including but not limited to: educating all employees; utilizing strong passwords; creating multi-layer security, including firewalls, anti-virus, and anti-malware software; encrypting data or making data unreadable without a key; using

Copy from re:SearchTX

multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

76.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protecting physical security systems; setting up protection against any possible communication system; and training staff regarding critical points.

77.     Defendants failed to implement and maintain cybersecurity measures meeting the minimum standards established by: (a) the NIST Cybersecurity Framework Version 1.1, including without limitation subcategories PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2; (b) the Center for Internet Security Critical Security Controls, including without limitation Controls 1, 3, 5, 6, 10, 13, and 17; (c) the HIPAA Security Rule, 45 C.F.R. §§ 164.308, 164.310, 164.312, and 164.314; and (d) other applicable industry-recognized standards for healthcare organizations handling protected health information. Each of the foregoing constitutes an established standard of reasonable cybersecurity readiness for a healthcare organization of Defendants' size and sophistication.

78.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendants failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

**K.     Value of PII and PHI**

79.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such

Copy from re:SearchTX

as data breaches or unauthorized disclosure of data.[7] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

80.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

81.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number.

82.    The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[8] The increase in

---

[7] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf      (last visited June 17, 2026).

[8] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. Dep't of Justice, Feb. 10, 2020, available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-fourmembers-china-s-military (last visited June 17, 2026).

Copy from re:SearchTX

cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants' industry, including Defendants.

83.    The PII and PHI of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9]

84.    Identity thieves can also use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

85.    Health insurance information can be used to steal someone's medical identity. Once someone's medical identity has been stolen, the information can be used to fraudulently obtain medical care or submit fraudulent claims for payment to health insurers without the victim's authorization. This type of identity theft can lead to unauthorized charges on a patient's account, incorrect reporting of a patient's medical record, and a diminished level of medical services.

---

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-thedark-web-how-much-it-costs/ last visited June 16, 2026).

Copy from re:SearchTX

86.     PII and PHI are valuable property rights. Their value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts. Even this obvious risk-to-reward analysis illustrates beyond doubt that PII and PHI has considerable market value.

87.     Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs their ability to participate in the economic marketplace.

88.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

89.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

## L.    Plaintiff's Experience and Injuries

90.     Plaintiff Ada Louise McHenry received healthcare services from Hendrick Medical Center, including both Hendrick Medical Center North and Hendrick Medical Center South, in which she provided her PII and PHI in order to receive medical care. Plaintiff has undergone numerous surgeries at Hendrick Medical Center facilities, including two back surgeries, a

---

[10] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited June 16, 2026).

Copy from re:SearchTX

procedure requiring stitches for a hand injury, and hernia mesh surgery in 1998 that resulted in complications requiring numerous additional surgeries.

91.    Defendants acquired, collected, and stored Plaintiff's PII and PHI.

92.    Defendants were obligated by law, regulations, and guidelines to protect Plaintiff's and the Class's PII and PHI, and Defendants were required to ensure they maintained adequate data security, infrastructure, procedures, and protocols for Plaintiff's and the Class's PII and PHI.

93.    Plaintiff received a Notice of Data Breach dated June 5, 2026, from Hendrick Medical Center d/b/a Hendrick Medical Center South and Hendrick Health. Plaintiff received this notice on or about June 12, 2026. The Notice stated that Plaintiff's PII and PHI may have been accessed, which may have included her Social Security number, date of birth, doctor name, medical diagnosis information, medical record number, medical treatment dates, and patient ID or account number.

94.    Plaintiff is very careful about sharing her sensitive PII and PHI. She has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

95.    Plaintiff stores any documents containing her sensitive PII and PHI in safe and secure locations. She would not have entrusted her Private Information to Defendants had she known of Defendants' inadequate data security policies.

96.    As a result of the Data Breach, Plaintiff's sensitive information may have been accessed and/or acquired by an unauthorized actor. The confidentiality of Plaintiff's sensitive information has been irreparably harmed.

Copy from re:SearchTX

97.     Plaintiff has received approximately nine to ten spam phone calls since the beginning of 2026, the timing of which aligns with the Data Breach. These calls involve individuals asking whether Plaintiff has specific medical insurance cards, such as a United Healthcare Card and/or a Medicaid Card, and requesting that Plaintiff provide the numbers on those cards. This suspicious activity occurred as recently as two to three weeks before the filing of this petition.

98.     As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, including verifying the legitimacy of the Notice of Data Breach and monitoring her accounts. This time has been lost forever and cannot be recaptured.

99.     As a direct and traceable result of the Data Breach, Plaintiff suffered actual damages such as: (i) lost time related to monitoring her accounts for fraudulent activity; (ii) loss of privacy due to her PII and PHI being exposed to cybercriminals; (iii) loss of the benefit of the bargain because Defendants did not adequately protect her PII and PHI; (iv) severe emotional distress because identity thieves now possess her PII and PHI; (v) exposure to increased and imminent risk of fraud and identity theft now that her PII and PHI has been exposed; (vi) the loss in value of her PII and PHI due to her PII and PHI being in the hands of cybercriminals who can use it at their leisure; (vii) actual misuse of her PII and PHI in the form of increased spam phone calls; and (viii) other economic and non-economic harm.

100.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of unauthorized third parties.

Copy from re:SearchTX

101.    Plaintiff has a continuing interest in ensuring that her PII and PHI, which upon information and belief remains in Defendants' possession, is protected and safeguarded from future breaches.

**M.    Plaintiff's and the Class Members' Damages**

102.    Plaintiff and the Class Members would not have provided their PII and PHI to Defendants had Defendants disclosed that they had inadequate data security measures, procedures, and safeguards.

103.    Plaintiff and the Class Members have suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach.

104.    Plaintiff and the Class Members suffered actual injury in the form of having their Private Information compromised and/or stolen as a result of the Data Breach.

105.    Plaintiff and the Class Members suffered actual injury in the form of damages to and diminution in the value of their Private Information -- a form of property that Plaintiff entrusted to Defendants.

106.    Plaintiff and the Class Members suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by their Private Information being placed in the hands of criminals.

107.    Plaintiff and the Class have a continuing interest in ensuring that their Private Information, which remains in Defendants' possession and stored within Defendants' systems, is protected and safeguarded from future breaches and third parties with inadequate data security.

108.    Plaintiff and the Class have also suffered actual injury as a result of the Data Breach in the form of (a) damage to and diminution in the value of their Private Information, a form of

Copy from re:SearchTX

property that Defendants obtained from them; (b) violation of their privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft and fraud they now face.

109.    As a result of the Data Breach, Plaintiff and the Class Members anticipate spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

110.    In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

111.    Plaintiff's and the Class Members' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendants' failure to ensure they had adequate data security and Defendants' inadequate data security practices.

112.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of fraud and identity theft.

113.    Additionally, as a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial

Copy from re:SearchTX

accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

114.   Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

115.   As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

116.   Plaintiff incorporates by reference all other paragraphs of this Petition as if fully set forth herein.

117.   Plaintiff brings this action as a class action on behalf of herself and all other persons similarly situated pursuant to Tex. R. Civ. P. 42.

118.   The proposed class which Plaintiff seeks to represent is defined as follows:

> **All individuals whose Personal Information was compromised in the data breach reported by Hendrick Medical Center d/b/a Hendrick Medical Center South and Hendrick Health arising from the phishing attack on Xsolis, Inc. on January 22, 2026, including all who were sent a Notice of the Data Breach (the "Class").**

119.   Excluded from the Class are: (1) Defendants and their affiliates, subsidiaries, officers, directors, legal representatives, and any entity in which Defendants have a controlling interest; (2) members of the judiciary and their staff to whom this action is assigned; (3) individuals

Copy from re:SearchTX

who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and (4) Plaintiff's counsel.

120. Plaintiff reserves the right to amend the definition of the Class or add a class or subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

121. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims for each Class Member.

122. This action satisfies the requirements for a class action under Tex. R. Civ. P. 42, including requirements of numerosity, commonality, typicality, and adequacy of representation.

123. **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, the phishing attack on Xsolis affected patients of Hendrick Medical Center whose Private Information was maintained by Xsolis in connection with case and utilization management services. The identities of Class Members are ascertainable through Defendants' records, Class Members' records, publication notice, self-identification, and other means.

124. **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature and scope of the information maintained by Defendants;

b.  Whether Defendants enabled an unauthorized disclosure of Class Members' Personal Information;

c.  Whether there was an unauthorized disclosure by Defendants of Class Members' Personal Information;

d.  Whether Defendants unlawfully used, maintained, lost, or disclosed Class Members' Personal Information;

e.  Whether Defendants misrepresented the safety and security of Class Members' Personal Information maintained by Defendants;

f.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h.  Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

i.  When Defendants became aware of an unauthorized disclosure of Class Members' Personal Information;

j.  Whether Defendants unreasonably delayed notifying Class Members of an unauthorized disclosure of Class Members' Personal Information;

k.  Whether Defendants intentionally delayed notifying Class Members of an unauthorized disclosure of Class Members' Personal Information;

l.  Whether Defendants' conduct was negligent;

m.  Whether Defendants' conduct was per se negligent;

n.  Whether Defendants' conduct was grossly negligent;

o.  Whether Defendants' conduct was deceptive;

p.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct;

q.  Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief; and

r.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

Copy from re:SearchTX

125.    **Typicality.** Plaintiff's claim is typical of the claims of all the proposed class members, as they are all similarly affected by Defendants' unlawful conduct and their claims are based on such conduct. Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Further, Plaintiff's claims are typical of the claims of all proposed class members because their claims arise from the same or similar underlying facts and are based on the same factual and legal theories.

126.    **Fair and Adequate Representation.** Plaintiff and her counsel will fairly and adequately protect the interests of proposed class members. Plaintiff's interests do not conflict with the interests of the class she seeks to represent. Plaintiff has retained counsel who are competent and experienced in class action litigation and complex cases, including data privacy litigation, and will fairly and adequately represent the interests of the proposed class. Plaintiff and her counsel will prosecute this action vigorously.

127.    **Predominance.** Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

128.    **Superiority/Appropriateness.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate

Copy from re:SearchTX

actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

129.    Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

130.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

## CAUSES OF ACTION

### Count I: Negligence
### (On Behalf of Plaintiff and All Class Members)

131.    Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

132.    Defendants required Plaintiff and the members of the Class to submit sensitive non-public PII and PHI as a condition of receiving treatment and healthcare services with Defendants.

133.    Defendants encouraged Plaintiff and the members of the Class to rely on their information security practices.

Copy from re:SearchTX

134.    Plaintiff and Class Members had a reasonable expectation of privacy in the PII and PHI disclosed to Defendants.

135.    As a healthcare provider and healthcare services vendor, Defendants are in a special relationship with Plaintiff and Class Members, which includes the duty to protect them against unreasonable risks of harm and negligent and intentional misconduct.

136.    Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices.

137.    The risk and probability of harm to the Plaintiff and Class Members from Defendants' failure to take precautionary measures was readily and clearly foreseeable. Not only were Defendants aware of the risk created by their inaction, but they were also in a unique position to know of the risk and prevent it.

138.    Defendants knew or should have known that they were high-value targets at a heightened risk of security breaches.

139.    The breach of security was reasonably foreseeable given the high frequency of phishing attacks and data breaches in Defendants' industry.

140.    It was therefore foreseeable that the failure to adequately safeguard Class Members' sensitive PII and PHI would result in one or more types of injuries to Class Members.

141.    Defendants' conduct was unreasonable in light of the recognizable risk of injury.

142.    Defendants failed to exercise that degree of care that would be used by a person or company of ordinary prudence under the same or similar circumstances.

Copy from re:SearchTX

143.    Defendants failed to implement and maintain reasonable procedures to protect from unlawful use or disclosure any sensitive personal information collected or maintained by the business in the regular course of business.

144.    Defendants failed to destroy or arrange for the destruction of patient records containing sensitive PII and PHI within the business's custody or control that were no longer needed.

145.    Defendants misrepresented their information collection, maintenance, and destruction practices.

146.    Defendants failed to timely notify affected individuals about the Data Breach.

147.    Defendants' own conduct created or exposed Plaintiff and Class Members to a recognizable high degree of risk of harm through their misconduct.

148.    Defendants knew or should have known that their cybersecurity measures were inadequate and in need of upgrading, yet they failed to take appropriate corrective measures.

149.    Defendants failed to implement appropriate technical and organizational measures to ensure a level of security appropriate to the risk.

150.    Defendants failed to identify foreseeable threats and vulnerabilities that could impact PII and PHI.

151.    Defendants failed to implement reasonable security measures designed to prevent this type of attack even though there have been similar attacks on similar businesses.

152.    Additional negligent acts and omissions committed by Defendants include, but are not limited to, the following:

- Failing to adopt, implement and maintain adequate security measures to safeguard Class Members' PII and PHI;

- Failing to adequately monitor the security of their networks and systems;

- Failing to periodically ensure that their network systems had plans in place to maintain reasonable data security safeguards;

- Allowing unauthorized access to Class Members' PII and PHI;

- Failing to detect in a timely manner that Class Members' PII and PHI had been compromised;

- Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

- Failing to have mitigation and back-up plans in place in the event of a cyberattack and data breach.

153.    The tortious conduct described above was a substantial factor in bringing about the Data Breach, and without which conduct such breach of security would not have occurred.

154.    The unauthorized access, theft, exfiltration, and misuse of Plaintiff's and Class Members' sensitive PII and PHI is a foreseeable result and natural consequence of Defendants' tortious conduct.

155.    Reasonable and adequate security measures could have prevented the Data Breach.

156.    But for Defendants' failure to implement and maintain adequate security measures to protect their patients' PII and PHI and failure to monitor their systems to identify suspicious activity, the PII and PHI of Plaintiff and Class Members would not have been stolen, Plaintiff and Class Members would not have been injured, and Plaintiff and Class Members would not be at a heightened risk of identity theft in the future.

157.    Defendants' negligence was a substantial factor in causing harm to Plaintiff and Class Members. As a direct and proximate result of Defendants' failure to exercise reasonable care

Copy from re:SearchTX

and use commercially reasonable security measures, the PII and PHI of Defendants' patients was accessed by unauthorized individuals.

158. Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and Class Members.

159. Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff and Class Members.

160. The injuries suffered by Plaintiff and Class Members are a natural and foreseeable consequence of Defendants' failure to employ reasonable security protections of their patients' PII and PHI.

161. As a result, Plaintiff and other impacted individuals suffered present injury and damages in the form of identity theft, loss of value of their PII and PHI, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the unauthorized access, exfiltration, and subsequent criminal misuse of their sensitive and highly personal information.

162. Wherefore, Plaintiff and Class Members pray for relief as set forth below.

## Count II: Negligence Per Se

### (On Behalf of Plaintiff and All Class Members)

163. Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges.

*Violation of the Texas Identity Theft Enforcement and Protection Act*

Copy from re:SearchTX

164. Defendants violated Tex. Bus. & Com. Code Ann. § 521.052(a), which requires that a "business shall implement and maintain reasonable procedures, including taking any appropriate corrective action, to protect from unlawful use or disclosure any sensitive personal information collected or maintained by the business in the regular course of business."

165. Defendants violated Tex. Bus. & Com. Code Ann. § 521.052(b), which requires that a "business shall destroy or arrange for the destruction of customer records containing sensitive personal information within the business's custody or control that are not to be retained by the business by: (1) shredding; (2) erasing; or (3) otherwise modifying the sensitive personal information in the records to make the information unreadable or indecipherable through any means."

166. Defendants violated Tex. Bus. & Com. Code Ann. § 521.053, which requires Defendants to disclose the breach of system security "without unreasonable delay and in each case not later than the 60th day after the date on which the person determines that the breach occurred," except as provided in the exceptions listed in the statute.

167. Tex. Bus. & Com. Code Ann. § 521.052 and § 521.053 are designed to protect a class of persons to which Plaintiff and Class Members belong against the type of injury suffered by Plaintiff. Namely, identity theft.

168. The statutes Defendants violated, Tex. Bus. & Com. Code Ann. § 521.052 and § 521.053, are ones for which tort liability may be imposed.

169. Defendants' violation of Tex. Bus. & Com. Code Ann. § 521.052 and § 521.053 was without legal excuse.

Copy from re:SearchTX

170. Defendants' breach of the duty imposed by Tex. Bus. & Com. Code Ann. § 521.052 and § 521.053 proximately caused injury to Plaintiff and Class Members and resulted in the damages described in this petition.

**_Violation of the FTC Act_**

171. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII and PHI.

172. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect customers' PII. The FTC publications and orders promulgated pursuant to the FTCA also form part of the basis of Defendants' duty to protect Plaintiff's and the members of the Class's PII.

173. Defendants breached their respective duties to Plaintiff and Class Members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII and PHI.

174. Defendants violated their duty under Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and the Class's PII and PHI and not complying with applicable industry standards as described in detail herein.

175. The harm that has occurred is the type of harm the FTCA is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class. Defendants' violation

Copy from re:SearchTX

of FTC Act standards is evidence of the applicable standard of care and supports Plaintiff's negligence claims.

*Violation of HIPAA*

176.    Under HIPAA, Defendants had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

177.    Moreover, under HIPAA, Defendants had a duty to render the electronic Private Information that they maintained as unusable, unreadable, or indecipherable to unauthorized individuals. Specifically, the HIPAA Security Rule requires "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key."

178.    Plaintiff and Class Members are within the class of persons that HIPAA was intended to protect. The injuries that Defendants inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against.

179.    Under § 17932 of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendants had a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered entities and affected persons so that the entities and persons can take action to protect themselves.

*Defendants' Violations Caused Plaintiff's and the Class's Injuries*

180.    But for Defendants' wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

181.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

182.    Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence per se.

183.    As a direct and proximate result of Defendants' negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII and PHI; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII and PHI, entitling them to damages in an amount to be proven at trial.

184.    Additionally, as a direct and proximate result of Defendants' negligence per se, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII and PHI, which remain in Defendants' possession and are subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their PII and PHI.

185.    Wherefore, Plaintiff and Class Members pray for relief as set forth below.

Copy from re:SearchTX

## Count III: Violations of the Texas Deceptive Trade Practices-Consumer Protection Act

### (On Behalf of Plaintiff and All Class Members)

186.    Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

187.    Defendants -- by failing to (1) maintain proper data security and (2) disclose their lack of proper data security -- have engaged in false, misleading, and deceptive acts or practices in the conduct of trade or commerce in violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, et seq. (the "DTPA").

188.    Defendants -- by failing to (1) maintain proper data security and (2) disclose their lack of proper data security -- have engaged in false, misleading, and deceptive acts or practices in violation of DTPA § 17.46(b), including but not limited to:

 a.    "[R]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not," DTPA § 17.46(b)(5); and

 b.    "[F]ailing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," DTPA § 17.46(b)(24).

189.    Defendants, by failing to (1) maintain proper data security and (2) disclose their lack of proper data security, committed an unconscionable act or practice.

Copy from re:SearchTX

190. Defendants, by failing to (1) maintain proper data security and (2) disclose their lack of proper data security, caused the Data Breach and resulting damages to Plaintiff and Class Members.

191. Defendants knowingly and intentionally failed to maintain proper data security and disclose their lack of proper data security to the public, including Plaintiff and Class Members.

192. Plaintiff and Class Members are consumers under the DTPA because they sought and acquired healthcare goods and services from Defendants.

193. Plaintiff and Class Members reasonably relied on Defendants' false, misleading, and deceptive acts to Plaintiff's and Class Members' detriment.

194. As a direct and proximate result of Defendants' violations of the DTPA, Plaintiff and Class Members have suffered actual damages, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach.

Copy from re:SearchTX

195.    Plaintiff and Class Members are entitled to recover actual damages, additional damages under the DTPA, court costs, and attorneys' fees as provided by Tex. Bus. & Com. Code Ann. § 17.50.

196.    Wherefore, Plaintiff and Class Members pray for relief as set forth below.

### Count IV: Invasion of Privacy -- Public Disclosure of Private Facts

**(On Behalf of Plaintiff and All Class Members)**

197.    Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

198.    In order to receive healthcare services from Hendrick Medical Center, Plaintiff and Class Members were required to provide, and did provide, Defendants with sensitive private information, including their Social Security numbers, dates of birth, doctor names, medical diagnoses, medical record numbers, medical treatment dates, and patient ID and account numbers.

199.    This Private Information -- including the medical diagnoses, treatment information, Social Security numbers, and dates of birth of Plaintiff and Class Members -- relates directly to the private lives of Plaintiff and Class Members. Plaintiff and Class Members shared this information with Defendants in confidence and solely for the purpose of receiving healthcare services.

200.    As a direct and proximate result of the Data Breach, Defendants gave publicity to matters concerning the private lives of Plaintiff and Class Members. Specifically, a targeted phishing attack against Xsolis resulted in an unauthorized third party or parties accessing and exfiltrating the Private Information of Plaintiff and Class Members. Upon information and belief, the stolen data has been or is being offered for sale, published, or made available to criminal

Copy from re:SearchTX

networks or dark web marketplaces. Plaintiff has already experienced an increase in unsolicited spam calls from unknown individuals seeking to obtain her medical insurance card numbers, which, upon information and belief, resulted from the unauthorized disclosure of her Private Information to cybercriminals. The scale of the breach affecting patients across Hendrick Medical Center's network demonstrates dissemination beyond a single bad actor and supports the reasonable inference that the data has been or will be publicly disseminated within criminal networks. Defendants' own breach notification letter constitutes an admission that Plaintiff's and Class Members' Private Information was acquired by unauthorized persons. It is clear that Defendants' negligent acts were the proximate cause of the public dissemination, and that the scale of dissemination was a foreseeable result of Defendants' failure to secure the data.

201.    The disclosure of Plaintiff's and Class Members' Private Information including Social Security numbers, dates of birth, medical diagnoses, treating physician names, medical record numbers, and treatment dates would be highly offensive to a reasonable person of ordinary sensibilities. Medical records and related health information are among the most sensitive categories of personal information that a person possesses. The unauthorized exposure of accurate medical information and identifying information to criminal third parties is paradigmatically highly offensive to a reasonable person. Texas does not require that the disclosed information be false the very accuracy of the medical and personal information makes its exposure more, not less, harmful.

202.    The Private Information of Plaintiff and Class Members that was publicized is not of legitimate public concern. Plaintiff and Class Members are private individuals who sought private medical care. Their personal health information, Social Security numbers, dates of birth, and related identifying details are not matters of legitimate public concern or newsworthy.

Copy from re:SearchTX

203. Defendants made or enabled the publicity of Plaintiff's and Class Members' Private Information without authorization.

204. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members suffered and will suffer injury, including: (i) invasion of their privacy; (ii) theft and unauthorized disclosure of their most sensitive Private Information; (iii) loss of the benefit of the bargain; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft; (v) lost opportunity costs associated with effort expended and loss of productivity addressing the consequences of the Data Breach; (vi) emotional distress, fear, and anxiety; and (vii) the continued and increased risk to their Private Information.

205. Wherefore, Plaintiff and Class Members pray for relief as set forth below.

## **Count V: Breach of Fiduciary Duty**

### **(On Behalf of Plaintiff and All Class Members)**

206. Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

207. A relationship existed between Plaintiff and the Class Members and Defendants in which Plaintiff and the Class put their trust in Defendants to protect their PII and PHI. Defendants accepted this duty and obligation when they received Plaintiff's and the Class Members' PII and PHI.

208. Plaintiff and the Class Members entrusted their PII and PHI to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their PII and PHI for business purposes only, and refrain from disclosing their PII and PHI to unauthorized third parties.

Copy from re:SearchTX

209.    Defendants knew or should have known that the failure to exercise due care in the collecting, storing, and using of individuals' PII and PHI involved an unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

210.    Defendants' fiduciary duty required them to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, ensuring and monitoring, designing, maintaining, and testing of their security protocols to ensure that Plaintiff's and the Class's information was adequately secured and protected.

211.    Defendants also had a fiduciary duty to ensure that they had procedures in place to detect and prevent improper access and misuse of Plaintiff's and the Class's PII and PHI.

212.    Defendants breached their fiduciary duties by failing to act in good faith, fairness, and honesty; by failing to act with the highest and finest loyalty; and by failing to protect the PII and PHI of Plaintiff and the Class Members.

213.    Defendants' breach of fiduciary duties was a legal cause of damages to Plaintiff and the Class.

214.    But for Defendants' breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred, and the Data Breach contributed substantially to producing the damage to Plaintiff and the Class.

215.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff and the Class are entitled to actual, consequential, and nominal damages and injunctive relief, with amounts to be determined at trial.

Copy from re:SearchTX

216.    Wherefore, Plaintiff and Class Members pray for relief as set forth below.

### Count VI: Unjust Enrichment

**(On Behalf of Plaintiff and All Class Members)**

217.    Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

218.    This count is pleaded in the alternative to Count VII (Breach of Implied Contract).

219.    Plaintiff and Class Members conferred a monetary benefit on Defendants by providing Defendants with their valuable Private Information.

220.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

221.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

222.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

223.    Defendants acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose their inadequate security practices previously alleged.

Copy from re:SearchTX

224. If Plaintiff and Class Members knew that Defendants had not secured their Private Information, they would not have agreed to provide their PII and PHI to Defendants.

225. To the extent Plaintiff and Class Members lack an adequate remedy at law, they are entitled to equitable relief under unjust enrichment.

226. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach; (vi) the continued risk to their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

227. Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendants' services.

228. Wherefore, Plaintiff and Class Members pray for relief as set forth below.

Copy from re:SearchTX

## Count VII: Breach of Implied Contract

### (On Behalf of Plaintiff and the Class)

229.    Plaintiff realleges and incorporates by reference in this count all paragraphs above as if fully set forth herein and further alleges:

230.    Plaintiff and Class Members were required to provide their PII and PHI to Defendants in order to receive healthcare services from Hendrick Medical Center.

231.    Plaintiff and Class Members disclosed their PII and PHI in exchange for services, along with Defendants' promise to protect their PII and PHI from unauthorized disclosure.

232.    On information and belief, in their written privacy policies and notices, Defendants expressly promised Plaintiff and Class Members that they would only disclose PII and PHI under certain circumstances, none of which relate to the Data Breach.

233.    On information and belief, Defendants further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII and PHI would remain protected.

234.    There was a meeting of the minds and an implied contractual agreement between Plaintiff and Class Members and Defendants, under which Plaintiff and Class Members would provide their PII and PHI in exchange for Defendants' obligations to: (a) use such PII and PHI for business purposes only; (b) take reasonable steps to safeguard that PII and PHI; (c) prevent unauthorized disclosures of the PII and PHI; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI; (e) reasonably safeguard and protect the PII and PHI of Plaintiff and Class Members from

unauthorized disclosure or uses; and (f) retain the PII and PHI only under conditions that kept such information secure and confidential.

235. When Plaintiff and Class Members provided their PII and PHI to Defendants as a condition of obtaining healthcare services, they entered into implied contracts with Defendants pursuant to which Defendants agreed to reasonably protect such information.

236. Defendants solicited, invited, and then required Class Members to provide their PII and PHI as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their PII and PHI to Defendants.

237. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations and were consistent with industry standards.

238. Plaintiff and Class Members would not have entrusted their PII and PHI to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

239. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

240. Defendants breached their implied contracts with Class Members by failing to safeguard and protect their PII and PHI.

241. As a direct and proximate result of Defendants' breaches of the implied contracts, Class Members sustained damages as alleged herein.

Copy from re:SearchTX

242.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

243.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

244.   Wherefore, Plaintiff and Class Members pray for relief as set forth below.

**DAMAGES OR EQUITABLE REMEDIES**

245.   Defendants' wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.

246.   As a result of Defendants' negligence, Plaintiff and members of the Class have suffered and will suffer injury, including but not necessarily limited to: (1) the loss of the opportunity to control how their Private Information is used; (2) the diminution in the value and/or use of their Private Information entrusted to Defendants for the purpose of deriving healthcare services from Defendants and with the understanding that Defendants would safeguard their Private Information against theft and not allow access and misuse of their Private Information by others; (3) the compromise, publication, and/or theft of their Private Information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how

Copy from re:SearchTX

to prevent, detect, contest and recover from identity and healthcare/medical data misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (7) unauthorized use of compromised Private Information to open new financial and/or healthcare or medical accounts; (8) tax fraud and/or other unauthorized charges to financial, healthcare or medical accounts and associated lack of access to funds while proper information is confirmed and corrected; (9) the continued risk to their Private Information, which remain in Defendants' possession and are subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their possession; and (10) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of the Class members.

247. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law.

### JURY DEMAND

248. Plaintiff hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class defined herein, prays for judgment against Defendants as follows:

- For an Order certifying this action as a Class action and appointing Plaintiff and her counsel to represent the Class;

- For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

Copy from re:SearchTX

- For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

- For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

- Ordering Defendants to pay for not less than three years, or such other period as the Court deems appropriate, of credit monitoring services for Plaintiff and the Class;

- For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

- For an award of punitive damages, as allowable by law;

- For additional damages under Tex. Bus. & Com. Code Ann. § 17.50(b) for Defendants' knowing violations of the DTPA, in an amount up to three times actual damages;

- For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

- Pre- and post-judgment interest on any amounts awarded; and

- Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**POTTS LAW FIRM, LLP**

*/s/ Emily B. Marlowe*
Emily B Marlowe
Texas Bar No. 24076206
Matt Price
Texas Bar No. 24108866
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Tel. (713) 963-8881
Fax (713) 585-5388
emarlowe@potts-law.com
mprice@potts-law.com

***Attorneys for Plaintiff and the Putative Class***

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gabriela Bonilla on behalf of Emily Adler Marlowe
Bar No. 24076206
gbonilla@potts-law.com
Envelope ID: 116304818
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition In Class Action
Status as of 6/18/2026 10:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Derek Potts | | dpotts@potts-law.com | 6/18/2026 9:26:36 AM | SENT |
| Paige Bahnsen | | Pbahnsen@potts-law.com | 6/18/2026 9:26:36 AM | SENT |
| Taci Villarreal | | Tvillarreal@potts-law.com | 6/18/2026 9:26:36 AM | SENT |
| Gabriela Bonilla | | gbonilla@potts-law.com | 6/18/2026 9:26:36 AM | SENT |
| Emily Marlowe | | Emarlowe@potts-law.com | 6/18/2026 9:26:36 AM | SENT |

Copy from re:SearchTX